24-1079 Nera Innovations v. Squires Good morning. Robert Octor here on behalf of Nera Innovations, the successor in interest to Scrimoge Technology, which is the owner of U.S. patent number 7825537, which we will call the 537 patent. The 537 patent is directed to inductive charging. Inductive charging is the way in which your cell phone in all likelihood gets charged without being directly plugged in when you put it on top of a charger. Induction is the process of magnetic fields going from the charger to your phone to charge the battery. The 537 patent was subjected to an inter-party review that was petitioned by Apple. Apple has since settled the case and moved on, which is why the Patent and Trademark Office is here as the intervener to represent the decision of the Board in this matter. The inter-party review found all challenged claims unpatentable over various prior art patents and published patent applications. And was it obvious or anticipation? Both, Your Honor, depending on which claims and which references. There were about six references total involved. Nera is only challenging the findings for claims 16 and 19-22, 19-22 of the 537 patent here. And we're only challenging those in the context of the combination of Flowerdew and Jang. Can you start with the claim construction argument? And on that argument, your argument I think is that you treat electrically connected and magnetically connected as two completely separate, mutually exclusive things. And where is there support for your proposed construction as meaning only electrically connected with no magnetism involved? Where is there support there in the specification? The support in the specification is that the detailed description on the drawings only show a direct electrical connection between the inductive coil and the load, which are the subjects of Claim 15. And to clarify, although we are discussing Claim 16, Claim 16 depends from Claim 15, which in turn depends from Claim 14, which in turn depends from Claim 12, which is why the… Can you point us to a particular part of the patent to support up your argument you're making with respect to electrically coupled? Well, electrically coupled, first off, your honor, in the drawings, figures one and two, if you see the inductive… The first inductive circuit, the coil, is directly wired, connected to the load, which is the box that's on the right in the two figures. And then the word coupled appears approximately, I think it was 19 times within the specification, the detailed description of 537 patent. And every one of those occurrences is either described as electrically coupled, specifically with the word electrically, or it refers to a direct electrical connection. And that is because in some cases it's referring to a DC connection, a direct current, which can only be done through a direct wire connection, cannot be inductively coupled, or… Well, I mean, I think the board took what you're saying, your argument, to hurt you rather than to help you. Because, I mean, there are other claims that use electrically connected, which in the board's view established that when they don't use the term, they knew how to use electrically connected when they wanted to limit to electrically connected. And the absence of the word electrically in the other claims demonstrates that it's not so limited. So that was the board's rationale. Why isn't that completely sensible? It was the board's rationale in part, Your Honor. It was actually the term electrically coupled in this case. And that was in the two of the claims that were not at issue in this IPR. I think it was Claims 26 and 27. And in that case, we argued that claim differentiation does not apply because there are substantial differences between those claims, 26 and 27, and the claims… I think it's Claims 23 and 27, just for the record. But it's not really just a claim differentiation issue. We have plenty of claim differentiations. It's the notion that when you mean something, as we assume, either you limit it or you don't. And if it's not limited, then it's not limited. So it's not so much a technically claim differentiation argument. It's just a demonstration of what you need to say in order to get a narrow claim construction, what the words of the claim say. Your Honor, our position is that because of the consistent use of coupled to only mean electrically coupled in this case, the fact that it has to mean electrically coupled in Claim 14 because Claim 14 involves a DC connection, therefore has to be a direct wire connection. And the precept or the concept, if you will, that one should construe a claim term consistently throughout a patent, that term being coupled, either coupled or coupling, but still the word couple, necessitates construing the word couple consistently as being electrically coupled. Otherwise, you have two claims, but one claim, if you look at the way they incorporate by reference the dependent claims, using the word coupled to mean two different things. Do you have access to the patent? Because I want to just make sure we kind of moor ourselves in the actual language of the patent itself. And feel free to bring that binder on up back here to the podium. And then once you find all of that, I want to look at and follow up on Judge Prost's good questions here about it looks like if you look at Claims 14 and 15, I believe it talks about coupling or coupled without the use of the word electric, electrically in front of it. Whereas if you look at Claims 23 and 27, it has electrically coupled in front of or electrically in front of coupled in each of those claims. According to your argument, I think you're saying that whether we're looking at Claims 14, 15, or just use the word coupled, or we look at Claims 23 and 27 and use electrically coupled, you're saying that's all going to mean the same thing. Is that your argument? Yes, Your Honor, that's correct. And as we pointed out in our reply brief, the claim differentiation should not apply where there are substantial significant differences between the claims. And we identified the differences between Claims 23 and 27 and the claims at issue 14 and 15. If I could come back, put aside claim differentiation, what about common sense? What reason would the patentee have for calling out electrically coupled in Claims 23 and 27 if the patentee meant coupled on its own to simply and always and only mean electrically coupled in all the other claims? The answer, Your Honor, is I believe that they were looking for a very specific description of pretty much correspondence and specification in the later claims. And they were breaking it up into the dependent claims early on. But clearly, a person of ordinary skill in the area would have understood that you had to be electrically coupled in context of Claim 14 because that refers to the connection, the direct current connection. And before it's turned into an alternating current, which can be inductively coupled. Given that you have to construe coupled to mean electrically coupled in Claim 14, then it follows that you have to construe the word coupled the same way as the same word appearing in the second claim. Or you should. I'm sorry, I thought the board's construction was broader than electrically coupled. So it would include electrically coupled. It's just not limited to it. It is broader, Your Honor. It actually, it necessarily includes inductively coupled because the board's construction was necessary for the sense coil to be identified as the load, which is what was done in context of the Flower Booth prior art reference. Had it been electrically coupled. So it's not responsive to your Claim 14 point? Yes, Your Honor. Okay, but doesn't that mean the board is correct? That coupled includes electrically coupled. And therefore, Claim 14 doesn't pose a problem for the board's analysis. That's correct, Your Honor. The issue is that we believe the word coupled should have been construed consistently in Claims 14 and 15 as well. But it is construed consistently to include but not be limited to electrically coupling, right? Except that you could not have inductive coupling in the context of Claim 14 because of the physical constraints of the elements that are connected in Claim 14. Okay. Why don't we move on? Your second argument with respect to the IPR is motivation to command, the absence of motivation to command references. Yes, Your Honor. With respect to Claims 12 and 16, we can start with Claim 12. The board held that there was a motivation to combine the Flower Do and Jang references in order to meet the claim limitations. The specific claim limitation that was being addressed with respect to Claim 12 was 12.3, which is rather long. But it's a switch element configured for selectively applying a time-varying electric current to said first inductive element to produce a time-varying magnetic field. Said time-varying magnetic field inducing electric current in said second inductive element. The PTAP found that a person of ordinary skill in the art would have been motivated to combine Flower Do and Jang and specifically to use Jang's disclosure of electronically controlled switches in what Jang identified as a variable frequency resonant inverter for what was the charging circuit in Flower Do as part of Flower Do's inductive battery charger. Respectfully, that was error. The PTAP found that the motivation to combine would have come from Flower Do and Jang's description of a mechanism for providing AC flow to a charging coil and second, that the use of Jang's switches was a known way to do that. The board then ruled that the petitioner, Apple Time, only needed to show that Jang was a suitable option to be used and that was sufficient to satisfy the motivation to combine. Counsel, what do you contend the board should have done with respect to motivation to combine? Because what I think you're indicating is you think the board didn't use the right approach or test. What do you contend is what needed to be done by the board here with motivation to combine? That's correct, Your Honor. Our contention is that the board should have followed the now teachings of Vertex Vision and considered whether or not there was evidence of a finite number of identified predictable solutions or a design need or market pressure consistent with KSR. In other words, there must be a reason for combining other than that these elements were simply known in the prior art. And they did not make any such finding. They simply said that it was sufficient, that it was there, and you could use it. And a similar ruling was made with respect to Claim 16, albeit with a different element of limitation. I thought they said that one of the prior art references is pretty general and you could get the details from the other one and that would give a person of skill in the art a motivation to put the details together with the general approach. Yes, Your Honor. Their assertion was that Flower Dew had a simplified explanation and version of it. And the issue there was there still wasn't a showing of any of the identified predictable solutions or any kind of design need or market pressure. But that's not the only basis on which KSR says there can be a motivation to combine. Those are examples where there is a motivation to combine, but they're not the only reasons, are they? No, Your Honor. There are a few other areas in KSR where they specifically identify. I could pull them if you'd like. I haven't highlighted them, but I'm sure this Court is more than familiar with KSR. Anything further? We're entering a rebuttal time. No, Your Honor. Thank you very much. Thank you. Good morning. Good morning, Your Honors. May it please the Court. Robin Frye on behalf of the Intervenor, Director of the United States Patent and Trademark Office. I'd like to begin by addressing the claim construction issue. As you noted, the claim construction analysis begins with the intrinsic evidence, the claims, the specification, and the prosecution history. Here, all of those sources support the Board's construction. As you noted, Claim 15 simply recites coupling. It doesn't specify electrical coupling or inductive coupling. And there's no dispute that the claims encompass both. It can operate with the inductive coupling. If you look at Claims 23 and 27, as you noted, when the patent owner wanted to recite electrical coupling, they did. And the fact that they didn't recite electrical coupling in Claim 15 is strong support for the Board's construction. If you look at the specification, the specification refers to both electrical coupling and inductive coupling and wireless coupling and coupling generally. There's no disclaimer or indication in the specification that the coupling going on in Claim 15 requires electrical coupling or is limited to electrical coupling. So, Counsel, can you respond to something that opposing counsel raised here? Because I think I just heard opposing counsel say when you look at Claim 14, that even though the actual language used there talks about coupling, that other parts of the claim language in Claim 14 require it to really be referring to electrically coupling. So, if you could just walk me through your response to that, that would be helpful. Sure. So, Claim 14 is coupling a DC voltage source to a first inductive element. Claim 15 is coupling a load circuit to a first inductive element. So, first of all, they're coupling different things. Second of all, Claim 14 recites coupling. It doesn't recite electrical coupling. It's not limited to electrical coupling. The Board explained that even if Claim 14 were limited and did require this electrical coupling limitation, that still wouldn't help the patent owner here because the elements being recited in Claim 15, it's conceded they don't require the electrical coupling. And the coupling limitation, as Judge Stark pointed out, is broad enough to encompass for Claim 14 the electrical coupling, even if electrical coupling was required. So, I don't think pointing to Claim 14 really helps the patent owner in this particular case. And is all of the intrinsic support that you think is relevant to us just moved into what's in the claims or the spec, or is there anything in the prosecution history that would be material? So, there's nothing in the prosecution history that helps the patent owner in this case. There's nothing that, you know, where they acted as their own electrochographer or made arguments that the coupling for this particular Claim 15 requires the electrical coupling. For purposes of the audience, could you explain what the prosecution history is? Just kind of give you a little bit of background. Sure. So, the prosecution history is just the administrative record between the patent applicant and the patent office where they filed their initial application with their claims and their specification. And then the office will submit an office action explaining why or why not the claims are patentable. They may issue rejection like they did in this case. And that administrative record is the prosecution history. There can be cases where an applicant will make statements in the prosecution history that could limit the scope of a claim if they had argued or made a concession that coupling these specific components requires an electrical coupling. That would be an example of something that would be relevant in the prosecution history, but there's nothing like that here. Do you want to move on to Motivation to Combine? Sure. Do you want to talk a little about the Vertec case that Judge Stark mentioned before because your friend rests on that a great deal? In the Vertec case? Well, that seemed to say, right, that just because there were two alternative arrangements out there, that's not enough to assess motivation. Exactly. And that is correct. If you simply have two references that disclose the elements, that alone is not sufficient to meet the obviousness standard. As this court has set forth in the cases we cite in our brief, Intel v. Qualcomm, Intel v. Pact, and Parr Pharmaceuticals, and in Raycon and KSR, you have to have an articulated reasoning with rational underpinning, which we have here, and also for the Motivation to Combine standard, the combination doesn't have to be the best option or preferred option. It just has to be a suitable option. And here the board explained why you would start with Flowerdew and it pointed to Figure 2 of Flowerdew, which discloses that simplified circuit diagram. It doesn't have any details on the switching elements. Flowerdew also admits that one of Skill and Liar would look to other circuit diagrams and components to implement that simplified circuit diagram. And that's substantial evidence that supports the board's rationale in this case. If there's no further questions, I'll yield the rest of my time. Thank you. Thank you. Thank you, Your Honor. To address the issue there, the board perhaps had alternative bases that are things they could have considered. In their decision, they said that the fact that it was a suitable option was enough. That was the board's basis for its decision. If there were more bases, or if they should have expressed more bases, then perhaps the case should be remanded for the board to further explore those. Much has happened, for example, in the Intel VPTAC case, where, of course, there were different circumstances. There was a defined need of cache coherence. There was a showing that having the secondary caches was a useful thing to have, especially in the case of multiprocessor cache coherence. And, of course, there were also two other bases, arguments for what the motivation to combine was, although those were not addressed in the Federal Circuit's decision, but they were at least considered by the board on remand in that case. Anything further? No, Your Honors. Thank you. We thank both sides. The case is submitted.